HENNEPIN COUNTY           DISTRICT COURT
STATE OF MINNESOA         FOURTH JUDICIAL DISTRICT

---

Aaron Olson,

      Plaintiff,

Court File No. 27-CV-21-4062

v.

**SUMMONS**

Amazon.com Inc.,

      Defendant.

---

You are hereby summoned and required to serve upon the undersigned an Answer to the Complaint, which is herein served upon you within twenty (20) days of service of said Complaint, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you in the amount demanded in the Complaint.

Dated: April 8, 2021

    Aaron Olson, Plaintiff in Propria Persona
    Holmes-Greenway Building
    114 5th St. S.E., Apt. 502
    Minneapolis, MN 55414
    Email: alolsona@hotmail.com
    Electronic Filer & Service Recipient
*Electronic Service Requested Pursuant to the MHRA & ADA

---

EXHIBIT A

District Court of Hennepin County
State of Minnesota

# COMPLAINT

Aaron Olson,

      Plaintiff,          Case No. 27-CV-21-4062

v.

       **Violation of the Minnesota Human Rights Act, Minn. Stat. § 363A; & Tort of Negligence**

Amazon.com Inc.,
      Defendant.

**<u>JURY TRIAL DEMANDED</u>**

---

1.) Plaintiff is a resident of Hennepin County.

2.) Defendant is a corporation headquartered in Seattle Washington.

3.) Defendant has corporate offices and warehouses in Minnesota wherefrom it conducts regular business in the state by delivering a wide range of goods to thousands of homes in Minnesota daily. Therefore, Minnesota courts have personal jurisdiction over Defendant. See *Marshall v. Inn on Madeline Island*, 610 NW 2d 670 - Minn: Court of Appeals (2000).

4.) Therefore, Defendant is also a "Place of public accommodation" within the meaning set forth in Minn. Stat. § 363A.03, Subd. 34.

5.) Plaintiff was a customer of Defendant while residing in Hennepin County.

6.) Plaintiff suffers from Post Traumatic Stress Disorder (PTSD) and other disabilities that substantially impair his ability to engage in gainful employment and often interfere with otherwise normal activities outside his apartment.

7.) Throughout 2019, Plaintiff had many discussions with Defendant's customer service agents via telephone, informing those agents that his order drop-off instructions, that Defendant's website welcomes customers to convey, included requested delivery to Plaintiff's *apartment* door, instead of anywhere else in or near his apartment building.

8.) Plaintiff also informed Defendant's customer service agents on many occasions of his need for delivery to his apartment door due to his disability and the disability hardship often involved with him being expected to retrieve packages from elsewhere, and also informed those agents that delivery to his building's front corridors or lobby area was likely to result in theft or further misplacement.

9.) In the summer of 2020, Defendant's customer service agents became unavailable for phone discussions due to new COVID-19 restrictions at call centers. At that point, Plaintiff began communicating with Defendant's customer service agents through an online chat option at Defendant's website. These online chats created a retrievable history of communication between Plaintiff and Defendant's agents, although Defendant is now blocking Plaintiff from access to that chat history.

10.) Throughout the online chats Plaintiff had with Defendant's customer service agents in 2020 and early 2021, Plaintiff repeatedly reported to Defendant that his ordered packages were not arriving for him, and attributed that to the fact Defendant's delivery agents routinely recorded dropping off packages for Plaintiff everywhere except for where Plaintiff had requested they be dropped off, which again was at his "APARTMENT" door. Plaintiff carefully explained that for Defendant many times.

11.) After "chatting" with many of Defendant's customer service representatives and supervisors concerning the foregoing problems with delivery and expressly referencing the reasonable accommodations provision of the Minnesota Human Rights Act (MHRA), on December 10, 2020, Plaintiff emailed the same to Defendant, detailing the problems he was encountering with his special delivery and reasonable accommodation requests not being honored.

12.) On December 14, 2020, Plaintiff emailed Defendant proof of his disability in the form of documentation from the Social Security Administration and reiterated his reasonable accommodation request for delivered packages to be left at his apartment door versus the myriad of other places Defendant was recording they were being delivered to. Plaintiff explained the situation in lengthy detail to Defendant and went on to explain how the requested reasonable accommodation would ameliorate his disability hardship created by Defendant's past delivery methods and response to his delivery complaints.

13.) Defendant continued on thereafter failing to reasonably accommodate Plaintiff's disability pursuant to the Minnesota Human Rights Act by refusing to deliver packages to Plaintiff's apartment door, while at the same time acknowledging that delivering packages to Plaintiff's apartment door was what Defendant should be doing and raising no objection to that.  See *Schuett Inv. Co. v. Anderson*, 386 NW 2d 249 - Minn: Court of Appeals (1986).[1]

---

[1] See also *Forbes v. St. Thomas University, Inc.*, 768 F. Supp. 2d 1222 - Dist. Court, SD Florida (2010), where a viable claim for failure to reasonably accommodate disability was pled against a place of public accommodation under federal law. Further, failure to reasonably accommodate disability under 363A.11 of the MHRA requires similar analysis as with failure to accommodate under federal law, given the parallel nature of the ADA and MHRA and the similarity with which courts have consistently interpreted these two statutes. See *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir.1996) (recognizing that courts may look to federal cases interpreting analogous federal anti-discrimination statutes for guidance in applying the MHRA); and *Lindgren v. Harmon Glass Company*, 489 N.W.2d 804, 808 (Minn.App.1992) (using McDonnell Douglas analysis for disability discrimination claim under the MHRA). Neither party raised any argument to the contrary."

14.) Shortly after Plaintiff's very clear emailed reasonable accommodation request to Defendant substantiating his disability and explaining the need for the reasonable accommodation, Plaintiff contacted Defendant's customer service agents again via "chat" concerning a missing package, wherein Defendant's customer service representatives confirmed receipt of Plaintiff's emailed reasonable accommodation request and could not explain to Plaintiff why his packages were still being delivered contrary to his requests.

15.) On February 13, 2021, Defendant emailed Plaintiff threatening to close his online account for requesting too many "refunds" for packages that he did not receive.

16.) On February 13, 2021, Plaintiff emailed Defendant back, stating that the missing packages were at least partially resultant of Defendant's failure to reasonably accommodate his disability pursuant to the MHRA and that closure of his account would likely cause litigation. The missing packages were also at least partially resultant of Defendant failing to honor Plaintiff's special delivery requests.

17.) On March 21, 2021, Defendant closed Plaintiff's online account, stating the grounds in Section #15 of this pleading and is denying him access to past written correspondence via "chat".

18.) Plaintiff's account with Defendant remains closed to this day.

19.) The refusal by Defendant to accept responsibility for not honoring Plaintiff's special delivery instructions that packages be delivered to his apartment door and further closure of Plaintiff's account by Defendant allegedly due to negative payment outcomes constitutes the tort of Negligence. See *Vaughn v. Northwest Airlines, Inc.*, 558 NW 2d 736, Minn. Supreme Court (1997).[2]

---

[2] "Before recovery is allowed on a theory of negligence, the defendant must owe a duty of care to the plaintiff. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982);

20.) Plaintiff is well within the statute of limitations for his claims commencing this action.[3]

21.) **WHEREFORE**, Plaintiff seeks damages from Defendant for the acts and omissions committed in Sections #8 through #14 of this Complaint under the Minnesota Human Rights Act, for Failure to Reasonably Accommodate his Disability; and under the theory of Negligence for the acts and omissions committed by Defendant in Sections #7, #10, and #15 through #18.

22.) Plaintiff seeks damages from Defendant for mental anguish, loss of payment for unreceived products, loss of access to offered products and services, and physical injuries related to mental anguish and loss of products and services.

23.) Plaintiff seeks damages from Defendant in excess of $50,000, but not more than $74,900.

24.) Plaintiff shall herewith file a petition to proceed in forma pauperis and requests careful consideration by the Court.[4]

---

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed.1984) [hereinafter Prosser]. A duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Rasmussen v. Prudential Ins. Co.*, 277 Minn. 266, 268-69, 152 N.W. 2d 359, 362 (1967) (quoting Prosser § 53)."

[3] The statute of limitations for an MHRA claim is one year: See *Goodman v. Best Buy, Inc.*, 777 NW 2d 755 - Minn: Supreme Court (2010). The statute of limitations for a Negligence claim in Minnesota is six years. See *Kaiser v. Memorial Blood Center*, 486 NW 2d 762 - Minn: Supreme Court (1992).

[4] See *Sneh v. Bank of New York Mellon*, Dist. Court, Minnesota (2012): "See *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se complaints, 'however inartfully pleaded' are held to 'less stringent standards than formal pleadings drafted by lawyers.'). '"[I]f the court can reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so despite the [plaintiff's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir.1999) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991))."

Under penalty of perjury, I swear that the aforementioned is true and correct to the best of my knowledge.

Respectfully Submitted,

*[signature]*

Aaron Olson, Plaintiff in Propria Persona        Dated: April 5, 2021